[Cite as *State v. Penque*, 2015-Ohio-4880.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                      Court of Appeals Nos. L-14-1110
                                                                              L-14-1111
              Appellee

                                                   Trial Court Nos. CR0201301735
v.                                                                    CR0201401197

Richard Penque                                     **DECISION AND JUDGMENT**

              Appellant                            Decided:  November 13, 2015

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Claudia A. Ford, Assistant Prosecuting Attorney, for appellee.

Tim A. Dugan, for appellant.

* * * * *

**YARBROUGH, P.J.**

## I.  Introduction

{¶ 1} Appellant, Richard Penque, appeals the judgment of the Lucas County Court

of Common Pleas, convicting appellant of possessing a deadly weapon while under

detention, a felony of the first degree, assault on a peace officer, a felony of the fourth

degree, and two counts of assault on a corrections officer, felonies of the fifth degree. For the following reasons, we affirm.

## A. Procedural Background

{¶ 2} On May 10, 2013, the Lucas County Grand Jury indicted appellant on one count of assault, pursuant to R.C. 2903.13(A) and (C)(2)(a), a felony of the fifth degree. Appellant, who was serving a sentence for aggravated murder, among other convictions, was accused of assaulting a corrections officer at Toledo Correctional Institution ("TOCI") on April 2, 2013. While awaiting trial for the pending assault charge, appellant was incarcerated at the Lucas County Corrections Center, commonly referred to as the Lucas County Jail ("LCJ"). On February 7, 2014, the Lucas County Grand Jury indicted appellant on one count of having a deadly weapon while under detention, pursuant to R.C. 2923.131(B) and (C)(2)(a), a felony of the first degree, one count of assault, pursuant to R.C. 2903.13(A) and (C)(5), a felony of the fourth degree, and one count of assault pursuant to R.C. 2903.131(A), (C)(1) and (C)(4)(a), a felony of the fifth degree. The February 7, 2014 indictment stemmed from an incident at LCJ on January 11, 2014.

{¶ 3} On April 14, 2014, the state filed a motion for joinder of the two separate cases. The trial court granted the motion without objection and the matters proceeded to trial on April 28, 2015.

{¶ 4} At a trial to the bench, the state procured testimony from the victim of the April 2, 2013 incident, a corrections officer from TOCI, and several officers working at LCJ, who were involved in the incident on January 11, 2014. Also admitted into

2.

evidence was video surveillance from both TOCI and LCJ, along with a sharpened toothbrush with no bristles found in appellant's clothing on April 2, 2013. Appellant also testified in his own defense.

{¶ 5} When the trial concluded, the court found appellant guilty on all four counts and sentenced appellant to an aggregate total of nine years and three months in prison. Appellant's timely consolidated appeal followed.

## B. Assignments of Error

{¶ 6} On appeal, appellant assigns the following errors for our review:

1) The State of Ohio failed to provide legally sufficient evidence that Appellant assaulted Corrections Officer Smith.

2) The State of Ohio failed to provide legally sufficient evidence that Appellant possessed a deadly weapon.

3) Appellant's convictions were against the manifest weight of the evidence.

## II. Analysis

{¶ 7} Assignments of error Nos. 1 and 2 deal with sufficiency of the evidence, while assignment of error No. 3 addresses manifest weight of the evidence. "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

## Sufficiency of the Evidence

{¶ 8} In reviewing whether or not the state of Ohio provided legally sufficient evidence to support a conviction, this court must:

> examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492(1991), paragraph two of the syllabus.

{¶ 9} Appellant first argues that the state failed to provide legally sufficient evidence that appellant assaulted corrections Officer Smith. We disagree.

{¶ 10} To support a charge of assault, pursuant to R.C. 2903.13(A), (C)(1) and (C)(4)(a), the state must show the following: 1) appellant knowingly caused or attempted to cause physical harm to another, 2) the offense occurred in or on the grounds of a local correctional facility, 3) the victim of the offense is an employee of the local correctional facility, and 4) the offense was committed by a person who is under custody in the facility subsequent to the person's being charged with or convicted of any crime.

{¶ 11} It is undisputed that the confrontation in question occurred inside LCJ, that Officer Smith is an employee of the correctional facility, and that appellant was under custody at LCJ after being charged with, and convicted of, a crime. Further, the state

elicited testimony from Officer Smith regarding the incident.  Officer Smith testified that appellant bit him on his right middle finger causing a broken nail, broken skin, and bleeding, for which he sought medical treatment at a local hospital.

{¶ 12} For the charge of possession of a deadly weapon while under detention, under R.C. 2923.131(B) and (C)(2)(a), the state must show that appellant possessed a deadly weapon while he was under detention for aggravated murder, or murder.  For this charge, there is no dispute that appellant was incarcerated for aggravated murder.  The state submitted into evidence a modified toothbrush that had its bristles removed, and one end sharpened into a point.  Further, testimony was elicited from officers who indicated that the modified toothbrush had been rolled up into appellant's pant leg.  Officer Palko testified that he perceived the toothbrush to be a weapon and that it was sharp enough to pierce the skin and bust an artery, causing someone to bleed out and die.

{¶ 13} This evidence, viewed in a light most favorable to the prosecution, could provide the basis for a rational trier of fact to find the essential elements proven beyond a reasonable doubt.  Thus, the evidence is sufficient to support appellant's convictions.  Accordingly, appellant's first and second assignments of error are not well-taken.

## Manifest Weight of the Evidence

{¶ 14} For his third assignment of error, appellant argues that his convictions were against the manifest weight of the evidence.  We disagree.

{¶ 15} In a bench trial, the trial court assumes the fact-finding function of the jury.  Accordingly, when reviewing a manifest weight claim,

5.

The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

"The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id*.

{¶ 16} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs v. Fla.,* 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). A reversal based on the weight of the evidence, "unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict." *Id*. Instead, the appellate court "disagrees with the jury's resolution of the conflicting testimony." *Id*.

{¶ 17} It has been long held that the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to decide. *State v. Thomas*, 70 Ohio St.2d 79, 79-80, 434 N.E.2d 1356 (1982). The standard of review is therefore high, and the trial court, with its unique position to resolve the factual issues, enjoys significant deference to determine the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992).

6.

{¶ 18} Officer Lonnie Fosnight testified that on April 2, 2013, appellant requested a bar of soap and that the officer obliged. Shortly thereafter, appellant was let out of his cell, and immediately disrespected the officer regarding the manner in which the soap was delivered to him. Officer Fosnight testified that appellant was aggressive and struck him with a closed fist no less than three times before the officer was able to reach his panic button and mace. Appellant testified that Officer Fosnight was the aggressor and that he punched the officer several times in self-defense. The court, after hearing testimony and watching the video of the incident, determined that appellant was the aggressor in the altercation and that he did in fact assault Officer Fosnight. This determination is not against the manifest weight of the evidence.

{¶ 19} Testimony was elicited from several officers regarding the incident on January 11, 2014. Deputy Mahlon First testified to the time immediately leading up to the incident in question. Appellant and another inmate ("Perry") had committed several infractions and Deputy First attempted to reason with them to avoid a physical incident. As a result of these discussions, appellant agreed to remove the wet paper he had used to block the view of a camera directed toward his cell, and Perry was to be given a haircut by another inmate. When Perry left his unit to get his haircut, he assaulted the other inmate that was to cut his hair, causing a raucous on the floor. As a safety measure, appellant was ordered into his cell. Appellant did not immediately comply with the order, and several officers were needed to move appellant into his cell.

7.

{¶ 20} Deputy Sheriff Patrick Mangold testified that he was assigned to LCJ on January 11, 2015. He initially ordered appellant to lock down and lay on his bed. He testified that appellant was holding a broom that he interpreted to be a weapon, and although appellant eventually put the broom down, he felt that appellant may have another weapon. Deputy Mangold entered appellant's cell, and appellant struck him in the face with a closed fist causing swelling under his eye. Officer Collins and Officer Smith corroborated the testimony, stating that when they entered appellant's cell, they saw appellant strike Officer Mangold in the face.

{¶ 21} Officer Smith testified that after appellant struck Officer Mangold in the face, appellant was taken to the bed, and the officers attempted to place him in handcuffs. Appellant had his arms under his chest and refused to place his arms behind his back. Officer Smith then reached underneath appellant's left arm, and appellant bit him on his right middle finger. Although Officer Smith could not say whether or not the bite was intentional, it did break the skin and the nail, necessitating medical treatment. Appellant testified that he did not intentionally bite Officer Smith, but admitted that he had blacked out for a period of time, and really was not sure what had taken place. The court reasoned that given the testimony presented, the individuals present in the cell, and the damage done to Officer Smith's finger, that appellant had assaulted Officer Smith. This determination is not against the manifest weight of the evidence.

{¶ 22} Appellant's final argument entails whether or not the sharpened toothbrush is a deadly weapon. R.C. 2923.11(A) defines a deadly weapon as any instrument, device,

8.

or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon. In the present case, appellant admitted that he had removed the bristles from a toothbrush, and had sharpened one end into a point. Officers testified that the modified toothbrush could only be used as a weapon, while appellant argued that it was simply a tool used to fix his glasses.

{¶ 23} The court heard the conflicting testimony and weighed the credibility of the officers' testimony against the testimony of appellant. The court considered the fact that the item was concealed, the fact that appellant had previously been convicted of assault, the fact that he had previously been in altercations with inmates and corrections officers, as well as the appellant's statement that "somebody is going to get hurt." After considering these factors, the court determined that the modified toothbrush was specifically modified for use as a weapon. Further, the court determined that the modified toothbrush is capable of inflicting death. It is important to note that, along with the officers' testimony with regard to this issue, the modified toothbrush was admitted into evidence. The court physically examined the toothbrush and determined that the pointed end would certainly be capable of inflicting death. This determination was not against the manifest weight of the evidence.

{¶ 24} Therefore, appellant's convictions are not against the manifest weight of the evidence, and his third assignment of error is not well-taken.

9.

**Conclusion**

**{¶ 25}** Based on the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed.  Costs are hereby assessed to appellant in accordance with App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

Stephen A. Yarbrough, P.J.

James D. Jensen, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.